IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA REYNOLDS, | ) | CASE NO. 3:12-CV-38 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("the "Commissioner" or "Defendant") denying Plaintiff Cynthia Reynolds' application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth herein, the undersigned recommends the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

On February 21, 2008, Plaintiff Cynthia Reynolds ("Plaintiff" or "Reynolds") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 59, 142-46).[1] Reynolds alleged she became

---

[1] Both the undersigned and the Commissioner reference the administrative record by the transcript page. Plaintiff's citations to the record refer to the "PAGEID" number listed in ECF.

disabled on January 30, 2008, due to suffering from "heart problems, panic disorder, migraines, thyroid problems and anxiety." (Tr. 142, 160). Plaintiff's Disability Insurance benefits expired on December 31, 2010. (Tr. 13). The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. (Tr. 59-62). Thereafter, Reynolds requested a hearing before an administrative law judge to contest the denial of her applications. (Tr. 82-84). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 87-90).

On August 24, 2010, Administrative Law Judge Peri Collins (the "ALJ") convened a hearing via video to evaluate Plaintiff's applications. (Tr. 32-58). The ALJ presided over the proceeding from Dallas, Texas, and Plaintiff, along with her attorney, appeared in Dayton, Ohio. (Tr. 13, 32-34). During the hearing, the ALJ heard testimony from Plaintiff and vocational expert, Karyl Kuuttila. (Tr. 32-58).

On December 17, 2010, the ALJ issued an unfavorable decision denying Plaintiff's applications for benefits. (Tr. 13-24). Subsequently, Plaintiff sought review of the ALJ's ruling from the Appeals Council. (Tr. 9). But, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Reynolds now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Reynolds, born on August 20, 1963, was 44 years old on her alleged onset date. (Tr. 13). Accordingly she was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She graduated from high school and has past experience working as a nurse's aide and cashier. (Tr. 42, 55).

## II.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law.  At step one of the sequential analysis,[2] the ALJ determined Reynolds had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 15).  Although Reynolds worked on a part-time basis after her alleged onset date, the ALJ found this work did not rise to the level of substantial gainful activity.  (*Id*.).  At step two, the ALJ held Plaintiff suffered from the following severe impairments:  hypertension, migraine headaches, depression, anxiety and a history of coronary artery disease.  (*Id*.).  But, at step three, the ALJ ruled that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16-17).  Before moving to the next step, the ALJ assessed

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. § 404.1520(a).  The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Plaintiff's residual functional capacity ("RFC") to work. (Tr. 17-22). The ALJ found Reynolds retained the ability to perform a limited range of light work as defined in 20 C.F.R. §§ 416.967(b) and 404.1567(b). The ALJ also limited Reynolds to jobs involving "understanding, remembering and carrying out one to two step instructions" and "no more than occasional contact with coworkers and supervisors and incidental public contact." (Tr. 17). Because Plaintiff's prior jobs required a greater RFC than that which the ALJ assessed, at step four, the ALJ ruled Reynolds could not return to her past work as a cashier or nurse's aide. (Tr. 22). However, the ALJ determined Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 23-24). Therefore, the ALJ ruled Plaintiff was not disabled. (*Id.*).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V.  ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds.  First, Reynolds contends the ALJ failed to properly consider the combined impact of her physical and psychological impairments.  Second, Plaintiff argues remand is necessary because the ALJ failed to adequately consider the psychological evidence of record.  Neither of these objections warrants remand.

### A.  ALJ's Evaluation of the Psychological Evidence

Reynolds claims the ALJ failed to properly weigh the psychological evidence of record.  Plaintiff asserted a host of arguments challenging the ALJ's assessment of the psychological medical opinion evidence and the significance of her activities of daily living.  These objections are without merit.  The ALJ specifically addressed Plaintiff's problems with depression and

5

anxiety.  Although Plaintiff may disagree with the ALJ's analysis, the ALJ's ruling is supported by substantial evidence, and therefore entitled to affirmation.  *See Mullen*, 800 F.2d at 545.

Plaintiff mainly objects to the ALJ's decision to assign little weight to the opinion of Dr. Alan Boerger.  Dr. Boerger performed a one-time consultative examination on Plaintiff in June 2008.  (Tr. 669).  In the report of his findings, the doctor noted Reynolds "display[ed] symptoms of depression basically characterized as Major Depressive Disorder . . . . [and] problems with anxiety which would be characterized as Anxiety Disorder NOS and Post-Traumatic Stress Disorder."  (Tr. 673).  He also rated Plaintiff's overall Global Assessment of Functioning ("GAF") score at 49.  (*Id*).  Based on his observations, Dr. Boerger concluded the following: 1) Plaintiff was mildly impaired in her ability to relate to others; 2) Plaintiff's ability to understand and follow instructions and to maintain attention to perform simple repetitive tasks were moderately impaired; and 3) Reynolds' ability to withstand the stresses and pressures of day-to-day work was markedly impaired.  (Tr. 674).

The ALJ did not fully credit Dr. Boerger's findings because the ALJ found they were based on a single interview and the record failed to reflect a longitudinal history of mental health treatment to support Dr. Boerger's conclusions.  It is well-settled that the opinions of a one-time examining physician are not entitled to any special level of deference.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (ruling that medical opinion of a physician who examined the plaintiff on one occasion was "entitled to no special degree of deference").  The ALJ noted Dr. Boerger's opinion was based on his single interview with Plaintiff.  Reynolds has not rebutted this claim or explained why Dr. Boerger's opinion should have been entitled to greater weight even though he only examined Plaintiff once.

Additionally, the ALJ explained the record failed to show a longitudinal history of mental health treatment to support Dr. Boerger's findings. This ruling is supported by the record. As the ALJ noted, there is no evidence showing Plaintiff sought continuing mental health treatment prior to 2010. Outside of a brief psychiatric hospitalization in April 2008, the record fails to show that Plaintiff's problems with anxiety and depression persisted at or near this severity throughout the relevant period under review. In fact, Plaintiff did not start to receive routine mental health treatment until April 2010 when she presented to Lutheran Social Services. Before that time, Plaintiff's symptoms were managed through medication prescribed by her family physician. *See* (Tr. 44). Furthermore, even after Plaintiff began receiving treatment, the ALJ noted Plaintiff's symptoms were mostly situational, linked to stress from her separation from her husband and housing problems. Although Plaintiff cites to several instances where she complained of anxiety symptoms to her physicians and others, the ALJ discredited the credibility of her statements. The ALJ noted that despite her alleged problems, Reynolds was able to work during most of 2009, proving that her symptoms did not prevent her from being able to perform work activity.

The ALJ also noted Dr. Boerger's opinion was contradicted by Plaintiff's reported daily activities. Although Plaintiff argues the ALJ relied too heavily on her ability to perform various daily activities and misconstrued her actual activity level, the record supports the ALJ's evaluation of Plaintiff's daily activities. In reports submitted to the administration in April 2008 and July 2009, Reynolds admitted she could prepare meals on days she was not sick, launder clothes, take care of her pet, talk on the phone, go to the store, watch television and perform housework. (Tr. 181-84, 213-17). It was permissible for the ALJ to consider Plaintiff's retained ability to perform these types of activities and to construe this evidence against her. *See Blancha*

*v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (finding that an ALJ may consider the plaintiff's household and social activities when evaluating the plaintiff's complaints of disabling pain).  While Plaintiff's husband provided statements indicating Plaintiff could not handle stress, his statements also confirmed Plaintiff's retained ability to perform a wide range of activities.  For example, he indicated Reynolds was capable of taking care of her children and performing housework, some cooking and laundry.  (Tr. 192-94, 229).  Accordingly, the record shows that Plaintiff's psychological impairments did not preclude her from maintaining a fairly routine level of daily activity.

      B.  ALJ's Evaluation of the Evidence Relating to Plaintiff's Migraine Headaches

Plaintiff also objects to the ALJ's assessment of the frequency and severity of her migraines and the ALJ's evaluation of the opinions offered by Dr. Steven Bowers.  Plaintiff's objections are not well-taken.  The ALJ agreed Plaintiff's migraine headaches constituted as a severe impairment.  Although Plaintiff takes issue with the ALJ's choice of words when describing Plaintiff's migraines, the ALJ clearly believed this diagnosis constituted a legitimate impairment as the ALJ recognized it as one of Reynolds' severe impairments at step two of the analysis.  Though the ALJ accepted the diagnosis, the ALJ questioned the functional limitations and degree of pain associated with these migraines.  Plaintiff argues that the frequency of her headaches is clearly established by the fact that she presented to the emergency room with migraine headaches over 22 times during the relevant period.  However, the ALJ was not persuaded by this evidence due to what the ALJ described as Plaintiff's "drug-seeking behavior" and possible prescription drug abuse.  (Tr. 18).  The record shows several instances where Plaintiff presented to the emergency room and/or to her doctor complaining of migraines in an attempt to secure additional narcotic medication.  *See* (Tr. 285-86, 794-96).  The ALJ noted that

on at least two occasions, Reynolds admitted to seeking additional medication after prematurely running out of previous prescriptions.  Accordingly, this evidence undermines Plaintiff's assertions regarding the frequency of her migraines.

Additionally, the ALJ found Plaintiff's migraines were generally controlled with medication.  For example, the ALJ noted when Reynolds presented to the emergency room in March 2010 complaining of migraines, doctors administered medication to her and thereafter Reynolds reported feeling much better. (Tr. 977).  Furthermore, when Plaintiff later complained that her medication was no longer effective, her doctor treated her with a combination of medication and nerve blocks to control her symptoms.  (Tr. 991, 993, 995).  Plaintiff did not present the Court or the ALJ with evidence showing these nerve blocks were unsuccessful.

The ALJ also provided sufficient reasons for discounting the opinions of Dr. Steven Bowers.  On August 26, 2010, Dr. Bowers responded to medical interrogatories regarding Plaintiff's physical impairments.  (Tr. 1001-02).  Dr. Bowers opined Reynolds' impairments equaled listing level stating, "[d]ue to multiple, intractable headaches occurring frequently, severe [coronary artery disease] with chest pain compatible with angina and psych[ological] [medically determined impairments], the claimant can not [sic] sustain a 40 hr. work week at any exertional level." (Tr. 1001).  However, the ALJ assigned limited weight to the doctor's opinion finding the record did not support the doctor's findings.  Specifically, the ALJ explained Dr. Bowers' conclusion that Plaintiff was unable to perform work at any level was inconsistent with undisputed evidence showing Plaintiff had in fact maintained part-time employment after her onset date.  The ALJ also noted that Plaintiff's daily activities demonstrated she remained fairly functional despite her physical impairments.  The ALJ's criticisms of Dr. Bowers' findings are supported by the opinions of the state agency physicians.  In August 2008, state agency reviewer,

Dr. Jeffrey Vasiloff, evaluated Plaintiff's physical RFC and made findings consistent with the ALJ's RFC assessment. *See* (Tr. 713-20).

### C. ALJ's Consideration of Plaintiff's Combined Impairments

Based upon the undersigned's review of the ALJ's opinion, the Court is satisfied that the ALJ properly considered the combined impact of Plaintiff's physical and psychological impairments. As the Commissioner alluded, the Sixth Circuit's ruling in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987) and our sister court's opinion in *Balkema v. Commissioner of Social Security*, No. 1:10-cv-139, 2011 WL 2601479, at *3 (W.D.Mich. May 31, 2011) are instructive on this issue. In *Gooch*, the Sixth Circuit found that the ALJ's individual discussion of each of the claimant's impairments and specific reference to the claimant's "combination of impairments" was sufficient to show that the ALJ had considered the claimant's impairments collectively. *Gooch*, 833 F.2d at 592. The Sixth Circuit further noted, "[t]o require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id*. Likewise, the court in *Balkema* found the ALJ had satisfied his duty to consider the claimant's combination of impairments when in addition to discussing each of the claimant's impairments individually, the ALJ's RFC accounted for Plaintiff's exertional and nonexertional impairments. *Balkema*, 2011 WL 2601479, at *4.

The undersigned finds the ALJ properly considered the combination of Plaintiff's impairments under *Gooch* and *Balkema*. In the instant case, the ALJ properly addressed each of Plaintiff's impairments, both physical and psychological. The ALJ acknowledged these impairments constituted as severe under the regulations and then explained why they did not, individually or in combination, meet or equal a listed impairment. In addition, the ALJ articulated a RFC assessment which accounted for these maladies. The RFC announced

10

reflected the exertional and nonexertional limitations on Plaintiff's ability to work.  The ALJ's discussion of the RFC also included a thorough analysis of each of Plaintiff's severe impairments and how they impacted the ALJ's ultimate decision.  Accordingly, the substantial evidence of record shows the ALJ adequately considered the combined impact of Plaintiff's impairments.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date: December 6, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).